UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERMILA WALKER,

        Plaintiff,

v.                                 CASE NO. 3:25-cv-588-MMH-SJH

BAPTIST HEALTH SYSTEM, INC.,
etc.,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned on Defendant's Motion to Dismiss Plaintiff's Corrected Complaint for Damages and Supporting Memorandum of Law, ("Motion"), Doc. 10, which has been referred for a report and recommendation regarding an appropriate resolution, Doc. 21. Plaintiff has responded in opposition to the Motion ("Response"), Doc. 12, and, with leave, Doc. 19, Defendant has replied ("Reply"), Doc. 20. For the reasons herein, the undersigned respectfully **recommends** that the Motion be **granted in part and denied in part** to the extent stated herein.

### I.    Background

Plaintiff filed a Complaint for Damages ("Complaint"), Doc. 1, against Defendant seeking relief under Title VII of the Civil Rights Act of 1964 ("Title VII"). The two-count Complaint alleged discrimination and retaliation. *Id.* On June 3, 2025, the Court entered an Order ("Prior Order") *sua sponte* striking the Complaint as an impermissible shotgun pleading because it appeared to combine multiple causes of

action into a single count and it was unclear whether the count for "discrimination" alleged violation of Title VII based on a hostile work environment, an adverse employment action, or both. Doc. 8. The Prior Order thus directed Plaintiff to file a corrected complaint consistent with the Court's directives, clarifying that such a filing would not affect any right of Plaintiff to amend her pleading as a matter of course pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure ("Rule(s)"). *Id.* at 4 & n.1.

In response, Plaintiff filed the now-operative pleading, her three-count corrected Complaint for Damages ("Pleading"). Doc. 9. In the Motion, Defendant seeks partial dismissal of the Pleading on five grounds, arguing (i) the Pleading remains an impermissible shotgun complaint; (ii) Count I alleging disparate treatment is time-barred to the extent it asserts a failure-to-promote theory or is otherwise based on alleged actions occurring before October 26, 2023; (iii) any other actions alleged in Count I other than Plaintiff's termination do not constitute adverse employment actions; (iv) Count II fails to plausibly allege the requisite severe or pervasive conduct to state a claim for hostile work environment; and (v) Count III fails to plausibly allege protected conduct as required to state a retaliation claim. Doc. 10 at 2–3. These arguments are fully briefed and ripe for resolution. *See id.*; Docs. 12, 20.

## II.    Standard

A pleading stating "a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction …; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief

sought ....." Fed. R. Civ. P. 8(a). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rule 8(a) demands "more than an unadorned, the defendant unlawfully harmed me accusation." *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering the sufficiency of a pleading, review is generally confined to the "four corners of the complaint" and any attachments. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citation omitted).[1] Courts "accept the factual allegations supporting a claim as true and draw all reasonable inferences in favor of the nonmovant." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275 (11th Cir. 2018). But "a court is not required to credit 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'" *Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020) (citation omitted); *see also M.H. On behalf*

---

[1] As the "plausibility determination is 'context-specific[,]'" the Court's "judicial experience and common sense" are also properly considered on a motion to dismiss. *See Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1268 n.5 (11th Cir. 2023) (emphasis removed). The four-corners-of-the-complaint rule is also subject to exceptions for judicial notice and the "incorporation by reference" doctrine, *see Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024), but neither such exception applies here.

of *C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1270 (11th Cir. 2024); *Anthony v. Am. Gen. Fin. Servs., Inc.*, 626 F.3d 1318, 1321 (11th Cir. 2010). Thus, the duty to make inferences in favor of the plaintiff extends only to "reasonable inferences" and does not require that courts "draw plaintiff's inference." *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 452–53 & n.2 (2012); *see also Patton v. Carnival Corp.*, No. 22-13806, 2024 WL 1886504, at *3 (11th Cir. Apr. 30, 2024).[2] "And when determining whether the complaint crosses 'the line between possibility and plausibility of entitlement to relief,' 'courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer[.]'" *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (citations omitted); *see also Patton*, 2024 WL 1886504, at *2.

### III.   Facts

Applying the foregoing standard, for purposes of the Motion,[3] the facts are as follows:

Defendant formerly employed Plaintiff, an African American female, from August 2020 until February 29, 2024. Doc. 9, ¶¶ 12, 15, 65. Hired as a respiratory

---

[2] Unpublished opinions are not binding precedent; however, they may be cited when persuasive on a particular point. *See United States v. Futrell*, 209 F.3d 1286, 1289–90 (11th Cir. 2000); 11th Cir. R. 36-2.

[3] Given the standard of review, these may not be the actual facts, or the facts for other purposes.

therapist, Plaintiff was the only African American in Defendant's neonatal intensive care unit ("NICU") through November 2023. *Id.*, ¶¶ 15–16.

Plaintiff interviewed for the lead respiratory therapist position with Edwin Soto Jr., a manager, and Danny Ray, another NICU employee, but they failed to discuss the interview with Plaintiff's point of contact and she was thus not offered the role, which was instead filled by a Caucasian female. *Id.*, ¶¶ 17–18. During Plaintiff's employment "several employees left the facility due to" Mr. Soto's "perceived bias and unfairness." *Id.*, ¶ 19.

On December 19, 2022, Chad Graziano assumed a "NICU management position" and began a "pattern of mismanagement and operational failures." *Id.*, ¶ 20. He in turn earned "the reputation of being bias[ed] and unknowledgeable of the rules and procedures of the facility." *Id.*, ¶ 22. For example, he violated company policy by "assigning tasks to employees without compensating them[.]" *Id.*, ¶ 21. He also once mismanaged a schedule causing confusion as to who was scheduled for a particular shift and denied another staff member's request for training the employee to work in an environment where the employee felt unprepared. *Id.*, ¶¶ 50–52. Mr. Graziano required Plaintiff "to 'float' between the NICO and the PICU." *Id.*, ¶ 23.[4] Under his "rules, the Plaintiff was the only therapist required to 'float' to other areas of the hospital." *Id.* Indeed, though "another therapist, a Caucasian female," was "qualified

---

[4] NICO appears to be a scrivener's error and intended reference to NICU. PICU is undefined in the Pleading but appears to potentially reference a pediatric intensive care unit. In any event, the Pleading is clear that Plaintiff, and she alone among the therapists, was required to "float" from her assigned unit to another unit. *See id.*

to 'float' to other areas and possessed PICU experience, Mr. Graziano stated that that particular therapist was anchored exclusively to the NICU" leaving Plaintiff alone among the therapists to "float" with another unit and with no other therapists trained to do so. *Id.*, ¶¶ 24, 53.[5]

On one occasion, "Mr. Graziano singled out the Plaintiff and wrote her up for performing patient checks every six (6) hours instead of every four (4) hours" even though "Caucasian employees who engaged in the same conduct were never written up" for it. *Id.*, ¶ 25. Plaintiff initially refused to sign the write-up, but she ultimately capitulated after believing she had no choice when Mr. Graziano threatened to escalate the issue to Mr. Soto. *Id.*, ¶¶ 26–28. Plaintiff ultimately received "multiple unwarranted write-ups" from Mr. Graziano, including one for excessive call-outs from work, but Caucasian employees with "similar or worse attendance records" were not written up. *Id.*, ¶¶ 29–31. Plaintiff was separately written up for leaving early due to a dental emergency, even though she had informed her supervisors (including Mr. Graziano) before leaving and asked to be removed from the shift, a request often made by her Caucasian colleagues, some of which called out of work the same day without reprimand, *id.*, ¶¶ 32–34. On February 8, 2024, Plaintiff was asked to meet with Mr. Graziano, Mr. Soto, and Ashley Kellum (another supervisor), "with reference to this

---

[5] There is arguable tension between the allegations in paragraphs 24 and 53 of the Pleading. Reconciling them in Plaintiff's favor, the undersigned construes the allegations to be that no therapist other than Plaintiff was *trained* to float between departments, meaning the only other therapist *qualified* to do so—who was not required to float—was qualified based only on prior experience (not cross-training). *See id.*

write-up." *Id.*, ¶ 35. Plaintiff "requested that a Human Resources representative be present during the meeting[,]" but her request was denied. *Id.*, ¶ 36.

At the meeting, "Mr. Soto spoke to the Plaintiff with hostility and intimidation"; Plaintiff, who "was not given a fair opportunity to explain herself[,]" felt "targeted, bullied, and intimidated." *Id.*, ¶ 37. Plaintiff subsequently reached out to Tabitha Ford, the department director, "to request a second meeting to include the Plaintiff, Ms. Ford and an HR representative" but no such meeting was scheduled. *Id.*, ¶¶ 38–39. Given that Plaintiff had an unforeseen dental emergency for which she provided a doctor's note, was only covering a previously unscheduled shift she had voluntarily agreed to take on, had explained her need to leave in advance, and received a write-up even though Caucasian employees who had called out did not, she felt "singled out and treated differently based on her race." *Id.*, ¶¶ 40–49.

On February 27, 2024, Mr. Soto notified Plaintiff that she had been accused by two different coworkers of misconduct, including for (i) improperly taking another employee's equipment and (ii) being rude and unprofessional with a registered nurse. *Id.*, ¶¶ 55–56, 61, 67. The accusations were without merit. *Id.*, ¶¶ 56–58, 61–62. But Plaintiff, whose conduct was justified, never received a written copy of the complaints and was thus unable to adequately defend herself. *Id.*, ¶ 59. Plaintiff should have been placed on administrative leave pending an investigation, but she was instead terminated on February 29, 2024. *Id.*, ¶¶ 60, 65. By comparison, other Caucasian employees were not terminated for their misconduct, including threats of physical violence by one and alleged sexual harassment by another. *Id.*, ¶¶ 63–64.

Plaintiff's performance before her termination was "strong"— she consistently worked overtime, "consistently received positive evaluations[,]" and received no "negative evaluation" of her performance. *Id.*, ¶¶ 68–69. After her termination, Plaintiff sought to utilize a grievance process to regain her position, but to no avail. *Id.*, ¶¶ 70–72. Instead, a mass email was sent to NICU that Plaintiff was no longer employed, amplifying the humiliation of her termination. *Id.*, ¶¶ 73–74. Plaintiff filed her pre-suit charge of discrimination ("EEOC Charge") on August 21, 2024. *Id.*, ¶ 3.

## IV.    Discussion

The Motion presents five issues. Doc. 10 at 2–3. Each is addressed in turn.

### a.    The Pleading is not a shotgun complaint.

Defendant first argues that the Pleading is an impermissible shotgun complaint. Doc. 10 at 2, 6–7. It does so primarily on the theory that Counts I and II each incorporate and adopt the same 90 paragraphs of predicate allegations. Doc. 10 at 2, 6–7; *see also* Doc. 20 at 4. Defendant also argues that Count III contains stray references to sex/gender discrimination "even through the rest of the pleading is framed entirely as race discrimination" and, in any event, "fails to identify protected activity[.]" Doc. 10 at 2, 6. Finally, Defendant argues in passing that the Pleading lumps together discrete adverse acts in a single count. *See id.* at 7.[6]

---

[6] A passing and undeveloped argument is generally insufficient to raise an issue. Beyond that, Defendant appears to abandon this argument in its Reply. *See* Doc. 20 at 4 ("Although the [Pleading] separate counts, each count still incorporates the same 90 paragraphs wholesale and fails to tie specific facts to specific claims."). Nevertheless, given the Court's obligation to *sua sponte* remedy any shotgun-pleading deficiencies, Doc. 8 at 3, the undersigned will address in full whether the Pleading is proper.

Relying mostly on *Weiland v. Palm Beach Cnty. Sherrif's Office*, 792 F.3d 1313 (11th Cir. 2015), Defendant argues that shotgun complaints are not tolerated in the Eleventh Circuit. Doc. 10 at 6–7; Doc. 20 at 4. No doubt—that is why the Prior Order, citing *Weiland*, promptly and *sua sponte* struck the original Complaint. Doc. 8 at 1–4. But the original Complaint, like the operative Pleading, incorporated a lengthy background of predicate allegations into each count, *see* Doc. 1, and that was *not* among the flaws outlined in the Prior Order's cure directives, *see* Doc. 8. Continued reading of *Weiland* makes the reason apparent: though the Complaint and the Pleading each incorporate the same predicate *allegations* into each count, neither wholesale incorporates any preceding *counts*. *See* Docs. 1, 9; *see also Weiland*, 792 F.3d at 1324. As such, Defendant's primary argument is misplaced; the incorporation of the first 90 paragraphs into each count does not render the Pleading a shotgun complaint. *See Weiland*, 792 F.3d at 1324 ("Weiland's re-alleging of paragraphs 1 through 49 at the beginning of each count looks, at first glance, like the most common type of shotgun pleading. But it is not. As we have already discussed, this Court has condemned the incorporation of preceding paragraphs where a complaint 'contains several counts, each one incorporating by reference the allegations of its predecessors [i.e., predecessor *counts]*, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.' What we have here is different. The allegations of each count are not rolled into every successive count on down the line.") (internal citations and footnote omitted; alterations in *Weiland*); *see also Du v.*

9

*McDonough*, No. 8:22-cv-1526-CEH-TGW, 2023 WL 4456873, at *1 (M.D. Fla. July 11, 2023) ("The Amended Complaint here is not a shotgun pleading. … The counts in the Amended Complaint each cite to the same set of allegations, but not all of the preceding counts."); *Acufloor, LLC v. Eventile, Inc.*, No. 2:21-cv-802-SPC-MRM, 2022 WL 861575, at *2 (M.D. Fla. Mar. 23, 2022); *Datto, Inc. v. Moore*, No. 8:20-cv-2446-T-33TGW, 2020 WL 7318957, at *6 (M.D. Fla. Dec. 11, 2020).[7]

Nor is the Pleading a shotgun complaint due to stray references to sex discrimination in discrete and conclusory allegations in Count III, in what Defendant acknowledges understanding is otherwise plainly a race case. *See Charles v. GEO Grp. Inc.*, No. 22-13891, 2024 WL 1619911, at *3 (11th Cir. Apr. 15, 2024) ("Here, the district court abused its discretion by dismissing Jean Charles's first and second amended complaints as shotgun pleadings. … [I]t is not 'virtually impossible' to understand Jean Charles's claims or 'which allegations of fact are intended to support which claim(s) for relief.' She believes her employer subjected her to discrimination and retaliation prohibited by Title VII. … While … the second amended complaint includes a stray allegation that Jean Charles was 'harassed' based on her race, no facts are alleged in that paragraph, and the actual claims asserted in Counts I and II are clearly stated in terms of (1) national origin discrimination based on a disparate impact theory and (2) retaliation. We do not require 'technical exactness' in pleading, and a

---

[7] Indeed, given the overlapping nature of the Title VII claims alleging disparate treatment, a hostile work environment, and retaliation, it is hardly surprising that a common predicate would overlap. *See, e.g.*, *Campbell v. Youth Opportunity Invs., LLC*, No. 3:23-cv-938-MMH-MCR, 2024 WL 3103439, at *3 (M.D. Fla. June 24, 2024).

mere reference to being 'harassed' does not create any real impediment to understanding Jean Charles's claims.") (internal citations omitted). As for the failure to allege statutorily protected conduct, that may be a problem, but it is a substantive one in a discernable claim alleging retaliation, not a shotgun-pleading deficiency. *See, e.g.*, *Euwema v. Osceola Cnty.*, No. 6:20-cv-1375-Orl-37DCI, 2021 WL 2823443, at *2–6 (M.D. Fla. Jan. 11, 2021) (finding complaint was not shotgun pleading but was subject to dismissal for failure to allege certain claims).

Finally, in these circumstances, the Pleading is not a shotgun complaint on the basis that it alleges multiple adverse actions within a single count for racially disparate treatment. As the papers reflect, Defendant is able to understand—and address on the merits—Plaintiff's claims and allegations. Doc. 10 at 8–14; Doc. 20 at 2–4. Plaintiff (a single party) sues Defendant (a single party) under Title VII. Doc. 9. Plaintiff properly separates into distinct counts her allegations of disparate treatment (Count I), a hostile work environment (Count II), and retaliation (Count III). *Id.* That Count I asserts multiple alleged adverse actions does not under the circumstances render the Pleading undecipherable. *See, e.g.*, *Campbell v. Youth Opportunity Invs., LLC*, No. 3:23-cv-938-MMH-MCR, 2024 WL 3103439, at *1–4 & n.6 (M.D. Fla. June 24, 2024) (declining to dismiss complaint as shotgun pleading where four-count complaint asserted one count each for age discrimination and retaliation under federal and state laws and where the respective discrimination counts each asserted "three distinct adverse employment actions"); *see also Vizza v. Del Toro*, No. 3:24-cv-399-WWB-LLL, 2025 WL 1279341, at *4–5 (M.D. Fla. Jan. 13, 2025) (rejecting argument that inclusion of

a single count alleging discrimination based on multiple adverse employment actions rendered pleading a shotgun complaint), *report and recommendation adopted,* 2025 WL 1279352 (M.D. Fla. Mar. 12, 2025).[8]

To be sure, the multiple adverse employment actions alleged in Count I are probably best viewed here as separate claims. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). But Rule 10(b) requires "each claim founded on a separate transaction or occurrence" to be "stated in a separate count" only where "doing so would promote clarity[.]" Fed. R. Civ. P. 10(b); *see also Amegy Bank Nat. Ass'n v. Deutsche Bank Corp.*, 917 F. Supp. 2d 1228, 1232–33 (M.D. Fla. 2013) (rejecting argument that plaintiff "impermissibly combined two claims into one count" and explaining that separation of claims "is required by Rule 10(b) 'only when necessary to facilitate a clear presentation'") (citation omitted); *Palma Vista Condo. Ass'n of Hillsborough Cnty., Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 8:09-cv-155-T-27EAJ, 2010 WL 2293265, at *3 (M.D. Fla. June 7, 2010) ("Fed.R.Civ.P. 10(b) requires separation of claims into separate counts only when necessary to 'promote

---

[8] *Vizza* construed the multiple adverse employment actions as different theories of a single claim for discrimination. *See id.* As discussed herein, at least in this case, the multiple alleged adverse employment actions are probably better viewed as discrete claims. Regardless, whether viewed as distinct "theories" or "claims," for the reasons herein, it is not improper for the alleged adverse actions to appear in a single count, and it is ultimately appropriate to evaluate whether each alleged adverse action is actionable.

clarity.'"). While Plaintiff could—and perhaps as a best practice should—have separated each adverse action into a separate count, the Pleading is sufficiently clear that it is not subject to dismissal as a shotgun complaint.

### b. Count I is due to be dismissed in part.

As discussed, Defendant seeks only partial dismissal of Count I, arguing that Count I is time-barred to the extent it asserts a failure-to-promote theory or is otherwise based on alleged actions occurring before October 26, 2023, and that any other actions alleged in Count I other than Plaintiff's termination do not constitute adverse employment actions. Doc. 10 at 2. In other words, Defendant does *not* seek dismissal of Count I to the extent it alleges discriminatory termination but otherwise seeks dismissal of Count I. *Id.* Before addressing Defendant's arguments, it is appropriate to consider a threshold issue not discussed by the parties—whether partial dismissal of a count within a pleading is an available remedy. In these circumstances it is.

Unlike Rule 56(a), which contemplates summary judgment on whole claims and parts of claims, Rule 12(b)(6) is worded in terms of whole claims. *Compare* Fed. R. Civ. P. 56(a), *with* Fed. R. Civ. P. 12(b)(6). So, some (nonbinding) authority generally counsels against partial dismissal of a claim under Rule 12(b)(6). *E.g.*, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021); *Griffin v. Internal Revenue Serv.*, No. 22-cv-24023, 2024 WL 2866657, at *1 (S.D. Fla. May 30, 2024). But other (nonbinding) authority recognizes it may nevertheless be appropriate to partially dismiss a single count of a pleading. *E.g.*, *Roman v. Tyco Simplex Grinnell*, No. 8:16-cv-3449-T-33AEP, 2017 WL 3394295, at *6–7 (M.D. Fla. Aug. 8, 2017). Here, for example, as discussed

above, though it may not result in a shotgun deficiency, Count I of the Pleading does combine discrete alleged adverse actions. So partial dismissal of that count to separately evaluate the viability of each alleged adverse action within it is consistent with the Rules. *See Amegy Bank Nat. Ass'n*, 917 F. Supp. 2d at 1232–33, 1241; *see also Roman*, 2017 WL 3394295, at *6–7. Indeed, that Rule 10's clarity-promoting standard did not *require* Plaintiff to separate each alleged adverse action into a separate count even though Plaintiff could (and as a best practice should) have done so does not mean that untimely or otherwise unactionable claims should persist merely because Plaintiff opted to combine the allegations into a single count. *See Morgan*, 536 U.S. at 105, 114. Finally, Defendant's arguments for partial dismissal of Count I are fully briefed. And while Plaintiff's Response addresses those arguments substantively, the Response does *not* raise any procedural argument against partial dismissal as a remedy under the circumstances. As such, that Defendant does not challenge Count I as it pertains to Plaintiff's discriminatory-termination claim does not preclude consideration of whether Count I is subject to partial dismissal to the extent it is based on adverse actions other than Plaintiff's termination.

### i. Some alleged adverse actions in Count I are time-barred.

Plaintiff filed her EEOC Charge on August 21, 2024. Doc. 9, ¶ 3. Defendant argues Count I, which alleges disparate treatment, is time-barred to the extent Plaintiff alleges a failure to promote or other actions occurring before October 26, 2023. Doc.

10 at 2, 8.[9] Citing *Morgan*, Plaintiff argues against dismissal based only on the continuing violation doctrine. Doc. 12 at 7–8.

Defendant is correct.[10] Florida is a deferral state, meaning discrete acts of termination are not actionable under Title VII if more than 300 days before a plaintiff's administrative charge—in this case, before October 26, 2023. *See* 42 U.S.C. § 2000e-5(e)(1); *Brooks v. CSX Transp., Inc.*, 555 F. App'x 878, 880 (11th Cir. 2014); *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). Plaintiff's argument—that under *Morgan*, "in hostile work environment cases, if any act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability"—is essentially self-defeating. *See* Doc. 12 at 7–8. Defendant limited its timeliness argument to Count I (alleging disparate treatment) and *not* Count II (alleging a hostile work environment). Doc. 10 at 8; Doc. 20 at 2.

---

[9] Citing the EEOC Charge, Defendant argues the failure to promote occurred in May 2022. Doc. 10 at 8. Though the EEOC Charge suggests as much, it is not entirely clear. Doc. 9-1 at 1. Regardless, the Pleading itself makes clear that the failure to promote was no later than December 2022, which is still well before October 26, 2023. *See* Doc. 9, ¶¶ 15–20. Plaintiff does not argue otherwise. Doc. 12 at 7–8.

[10] Defendant's Motion is worded imprecisely, arguing that Count I is due to be dismissed "to the extent it relies on" pre-October 26, 2023 actions, Doc. 10 at 2, and that "allegations or claims in Count I occurring before October 26, 2023" are time-barred, *id.* at 8. To clarify, though an untimely claim of discrimination may be barred, that does not mean that evidence to support otherwise timely claims must have occurred by a given date. So, while Plaintiff may not independently bring disparate treatment claims for actions before October 26, 2023, such does not necessarily foreclose relying on earlier allegations to support a later claim. *See Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1303 (11th Cir. 2023) (explaining that "[i]n general, events that occur outside the prescribed period aren't actionable" but "for any type of discrimination claim, an employee can cite 'prior acts as background evidence in support of a timely claim'") (quoting *Morgan*, 536 U.S. at 113). Nothing herein is intended to foreclose any such reliance.

As such, the continuing violation doctrine does not apply to untimely acts alleged in Count I, and given that Plaintiff makes no other effort to salvage any such claims—nor is one apparent—dismissal is warranted. *See Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 992–94 (11th Cir. 2025) ("In *Morgan*, the Supreme Court essentially rejected the continuing violation doctrine in Title VII claims and simplified the law by allowing courts to view allegations of hostile work environment as a single unlawful employment practice. Hostile work environment claims are continuing by their very nature—they are composed of a series of separate acts that collectively constitute one unlawful employment practice. Unlike discrete acts, hostile work environment claims depend upon proof of repeated conduct extending over a period of time. … To the extent Dr. Jimenez raises discrete claims of discrimination based on independent discriminatory acts, he cannot invoke the continuing violation doctrine to extend the limitations period for his claims. Despite Dr. Jimenez's attempts to characterize the failure to promote him to medical director and the denial of incentive and bonus pay as part of an ongoing unlawful employment practice, only actionable due to their cumulative effect, he cannot convert related discrete acts into a single unlawful practice for the purposes of timely filing. Each employment action was a separate, actionable unlawful employment practice regardless of its relationship to the acts alleged in [Dr. Jimenez's] timely filed charges. The failure to promote is easy to identify as a discrete discriminatory act. And the denial of Dr. Jimenez's bonus also qualifies as a specific employment decision[ ] with immediate consequences. As discrete acts, each decision occurred on the day that it happened, and started a new clock for filing charges alleging

16

that act. … It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that an employer may be liable for both untimely and timely acts that are part of the same claim. Unlike hostile work environment or constructive discharge claims, Dr. Jimenez's disparate treatment claims do not depend upon proof of repeated conduct extending over a period of time.") (internal citations and quotation marks omitted); *Manley v. DeKalb Cnty.*, Georgia, 587 F. App'x 507, 512 (11th Cir. 2014) ("The district court also correctly ruled that the continuing-violation doctrine did not apply to the plaintiffs' disparate-treatment claims arising before December 31, 2010, because those claims were based on the alleged denial of promotions, write-ups, and suspensions, which were all discrete acts of discrimination."); *Brooks*, 555 App'x at 880–81 (affirming dismissal because the continuing violation "doctrine does not apply to discrete acts of discrimination, such as a promotion denial or refusal to hire").

### ii.  Some but not all alleged actions in Count I are actionable.

As discussed above, with respect to the remaining non-promotion actions in Count I, Plaintiff alleges that she was unlawfully (i) required to "float" between departments, (ii) written-up and reprimanded, (iii) treated harshly during a meeting, and (iv) terminated. Defendant argues that only the termination qualifies as an actionable adverse employment action. Doc. 10 at 8–11; Doc. 20 at 3–4.

The Eleventh Circuit formerly held "that, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v.*

*Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). But as Defendant rightly acknowledges, that is no longer the law. *See* Doc. 10 at 9 (citing *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024)); *see also West v. Butler Cnty. Bd. of Educ.*, No. 23-10186, 2024 WL 2697987, at *2 (11th Cir. May 24, 2024) (explaining that *Muldrow*'s "standard differs from our pre-*Muldrow* caselaw").

 Under *Muldrow*, a Title VII plaintiff alleging discrimination must show "some 'disadvantageous' change in an employment term or condition"; that is, she "must show some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354–55. But she need not show "that the harm incurred was 'significant.' Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* (citation omitted).[11]

Defendant is correct that the bulk of Plaintiff's allegations—specifically the alleged reprimands, write-ups, and harsh treatment during a meeting—are not actionable even under *Muldrow*. While *Muldrow* excised heightening adjectives (*e.g.*, significant, serious, substantial, material, and the like), a Title VII plaintiff alleging discrimination must still show "some 'disadvantageous' change in an employment term or condition"—she "must show some harm respecting an identifiable term or condition of employment." *Id.* at 354–55. Plaintiff does not allege in her Pleading any such harm or disadvantageous change to any term or condition of her employment

---

[11] The Eleventh Circuit was not the only Circuit to have improperly applied a heightened requirement pre-*Muldrow*, and *Muldrow* thus gave a series of examples of the types of cases it would change. *Id.* at 355–56.

occasioned by the alleged reprimands, write-ups, or harsh meeting.[12] Thus, as to Count I, these alleged actions are not independently actionable. *See, e.g.*, *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 471 (7th Cir. 2025) ("Here, even under the more generous standard of *Muldrow* and considering the facts in the light most favorable to Ms. Arnold, she can maintain only that she was placed on a [performance improvement plan] and that the reorganization brought about some changes in her daily responsibilities. She remained a member of the same team and continued to work in the communications department of United's operation. Her compensation, benefits, vacation times, and working hours were not affected. Nor did she provide any evidence that her assignments while on the PIP were impossible for her to complete. She was given some additional assignments, and some of her assignments changed. But these changes were all within the normal scope of her employment and thus did not adversely affect the terms and conditions of her employment."); *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024) ("A mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment."); *Epperson v. Hertz Corp.*, No. 2:24-cv-383-SPC-DNF, 2025 WL 2855368, at *2–3 & n.5 (M.D. Fla. Oct. 8, 2025) (rejecting arguments of adverse action as "unavailing because *Muldrow* still requires the alleged harm affect an identifiable

---

[12] Nor is Plaintiff's Response of any help to her. Doc. 12 at 8–11. Though *Muldrow* works to her favor and was cited by Defendant, Plaintiff appears to revert to pre-*Muldrow* caselaw imposing a standard she cannot, but need not, satisfy as to her non-termination claims. *See id.*

term or condition of employment" and explaining that "disciplinary warnings are not adverse employment actions when they have no tangible effect on employment" and that "enhanced oversight and scrutiny is not itself a tangible effect on" employment nor is "the mere potential of future termination"); *Wilcox v. TMCFM, Inc.*, No. 2:22-cv-349-JLB-KCD, 2025 WL 2097299, at *4 (M.D. Fla. July 25, 2025) ("Written reprimands by themselves do not constitute an adverse employment decision [even under *Muldrow*]. The written reprimands did not change a term or condition of Plaintiff's employment, nor does she allege that they had such an effect."); *Grimes v. Dep't of Def.*, No. 1:24-cv-1164-MSN-IDD, 2025 WL 1334054, at *3 (E.D. Va. May 7, 2025) ("Plaintiff must plead that the actions left her 'worse off.' … Plaintiff complains of negative feedback, ignored complaints, reprimands, requests to cover shifts, denial of telework, and lack of performance evaluations. These instances do not rise to the level of adverse employment actions."); *Phifer v. Koch Foods of Alabama, LLC*, No. 2:24-386-RAH-SMD, 2025 WL 1248617, at *3 (M.D. Ala. Apr. 30, 2025) ("*Muldrow* did not change the fact that a reprimand or write-up that *does not impact the terms or conditions of employment* does not constitute an adverse action within the meaning of a Title VII for a race-discrimination claim. Here, because the Plaintiff did not plead any facts to suggest that the write-up injured him in a way that impacted his compensation, terms, conditions, or privileges of employment, the write-up is not an actionable adverse employment action, even under the some-injury standard."); *Davis v. Orange Cnty.*, No. 6:22-cv-2222-PGB-UAM, 2025 WL 948934, at *4 (M.D. Fla. Mar. 30,

2025) ("While *Muldrow* explains that a harm need not be 'serious, or substantial, or any similar adjective,' it still requires that there be 'some harm.' Simply put, Plaintiff's allegations do not lead to an objectively reasonable belief that the written reprimands caused harm, or could have caused harm, here—before or after *Muldrow*.").

The allegation that Plaintiff was forced to "float" between departments is different, however.[13] Floating certainly implicates the terms and conditions of Plaintiff's employment, including the "what" and "where" of work. *See Muldrow*, 601 U.S. at 354. Defendant argues that there was no "harm" or "disadvantageous change" because the Pleading "describes this as part of Plaintiff's job duties as a Respiratory Therapist" and "floating here is portrayed as a routine rotation without specified detriment beyond being the only employee required to do it." Doc. 10 at 9–10. This is a fair argument—if floating were indeed a routine part of Plaintiff's job description but a part that she alone among all therapists was held to, that might constitute disparate treatment but not an actionable harm. *See, e.g., Murray v. Learjet, Inc.*, No. 24-11189, 2024 WL 4707968, at *2 (11th Cir. Nov. 7, 2024) (affirming summary judgment where there was "no evidence that the jobs Murray was assigned were not already within his job duties, such that they could constitute a change in his employment conditions"). But that is not the *only* reasonable read of the Pleading, and Plaintiff is entitled to reasonable inferences in her favor. *See Newton*, 895 F.3d at 1275.

---

[13] The Pleading does not directly allege when the forced "floating" occurred, and Defendant addresses the alleged "floating" only to argue it was not an adverse action and not as to timeliness.

Here, Plaintiff alleges that "[p]er Mr. Graziano's rules, the Plaintiff was the only therapist required to 'float' to other areas of the hospital." Doc. 9, ¶ 23. Such an allegation could be read as Defendant construes it, but it could also reasonably be read as alleging that Mr. Graziano *changed* the job requirements, albeit for Plaintiff alone, to require floating. The latter read is also consistent with Plaintiff's allegations that only one other therapist was even qualified to float in PICU. *Id.*, ¶ 24. Moreover, Plaintiff alleges that she "was forced" to float, *id.*, from which the reasonable inference of any such change being disadvantageous may be inferred, *see Muldrow*, 601 U.S. at 355 ("Many forced transfers leave workers worse off respecting employment terms or conditions. (After all, a transfer is not usually forced when it leaves the employee better off.)"). Ultimately, Plaintiff's allegations of forced floating are thin and may or may not survive later stages of analysis, but the undersigned recommends that they survive at this pleading stage. *Cf. Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) ("[The plaintiff] also alleged that she was reassigned to different patient care areas or work settings. Whether these changes resulted in 'some harm' to a term or condition of [her] employment requires further factual development. … Dismissal of the complaint on the basis of no adverse action is improper at this stage of the proceedings.").

### c.    Count II fails to state a claim and is due to be dismissed.

To bring a hostile work environment claim, a plaintiff must plausibly allege, with facts and not mere conclusions, five elements:

(1) [s]he belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on h[er] membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300–01 (11th Cir. 2010). Defendant argues that Count II fails to plausibly allege the fourth element, sufficiently severe or pervasive conduct. Doc. 10 at 11–12. The undersigned agrees.

A hostile work environment requires "that the workplace is permeated with discriminatory intimidation, ridicule, and insult[.]" *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (quotation omitted); *see also Anderson v. Fla. Dep't of Juvenile Justice*, No. 8:08-cv-2588-T-27EAJ, 2010 WL 11508049, at *2 (M.D. Fla. Mar. 31, 2010). As such, "the Eleventh Circuit has consistently held that a pattern of rude and insensitive remarks, and/or isolated instances of a more severe nature, are insufficient to establish a hostile work environment." *Howard v. Sunniland Corp.*, No. 2:16-cv-321-FtM-99MRM, 2016 WL 6524394, at *3 (M.D. Fla. Nov. 3, 2016) (collecting cases).

"The 'severe or pervasive' requirement entails both an objective component—namely, that a reasonable person would find the environment hostile or abusive—and a subjective component." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1302 (11th Cir. 2023); *see also McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008). In evaluating the objective competent, courts consider all the circumstances including "(1) the frequency of the conduct, (2) its severity, (3) whether it was 'physically threatening or humiliating, or a mere offensive utterance,' and (4) whether it

23

unreasonably interfered with the employee's job performance." *Harris*, 82 F.4th at 1302 (citation omitted); *see also McCann*, 526 F.3d at 1378; *Rojas*, 285 F.3d at 1344.

Plaintiff's hostile work environment claim is premised on her allegations of the failure to promote her, her forced "floating" (and the associated "additional job duties"), and the "bogus reprimands" she received. Doc. 12 at 12–14. Her allegations fall short of the requisite severity or pervasiveness.[14] As to the first objective factor, Plaintiff alleges infrequent conduct, citing only her floating obligations and a handful of discrete occurrences (one failure to promote and a series of reprimands) over the course of her employment spanning more than three-and-a-half years. As to the second factor, none of the conduct Plaintiff alleges was overtly race-based, and Plaintiff does not allege any slurs or historical symbols of racism.[15] As to the third factor, Plaintiff does not allege any violence or physical threats. As to the fourth factor, Plaintiff alleges the *absence* of any negative interference to her performance. *See* Doc. 9, ¶¶ 68–69 (alleging Plaintiff's performance preceding her termination was "strong" and that she consistently worked overtime, "consistently received positive evaluations[,]" and

---

[14] Title VII "is not a federal 'civility code.'" *Harris*, 82 F.4th at 1302. Only unwelcome harassment based on Plaintiff's race is factored into the calculus for a hostile work environment. *See id.* at 1302, 1304. Defendant argues only as to the severity or pervasiveness of Plaintiff's allegations, so the undersigned will focus on that element and presume all allegations qualify for consideration.

[15] Plaintiff argues that "[t]he law does not require racial remarks as the sole indicator of a hostile work environment." Doc. 12 at 12-13. Fair enough; but *some* indicator(s) must be plausibly alleged. *Cf. Hausberg v. Wilkie*, No. 8:20-cv-2300-TPB-JSS, 2021 WL 4133739, at *4 n.5 (M.D. Fla. Sept. 10, 2021) ("Facially neutral conduct, if motivated by a discriminatory purpose, may be considered as part of the 'totality of circumstances' supporting a hostile work environment claim, but such claims also typically include allegations of repeated verbal harassment or more severe, egregious, or overtly discriminatory conduct, such as offensive language, derogatory remarks, and the like.").

received no "negative evaluation" of her performance); *see also McCann*, 526 F.3d at 1378–79 (finding no hostile work environment as a matter of law where plaintiff alleged use of slurs and racially derogatory language, including one term directed to her personally, where the instances were "too sporadic and isolated" and where she alleged she was upset but failed to allege the "environment interfered with her job performance" and "actually testified that it did not affect her work").

In short, all evaluation factors weigh against a hostile work environment. *See Harris*, 82 F.4th at 1302; *McCann*, 526 F.3d at 1378–79; *Rojas*, 285 F.3d at 1344. So does case law. Allegations more severe than Plaintiff's have resulted in dismissal at the pleading stage. *See, e.g.*, *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 296 (11th Cir. 2012) (affirming dismissal of hostile work environment claim on motion to dismiss and holding allegations that plaintiff "was 'dirty' and for her 'to go to Hell' and 'burn in Hell,' and the playing of Christian gospel music," were insufficiently severe or pervasive to alter terms and conditions of employment); *Paul v. Saltzman, Tanis, Pittel, Levin & Jacobson, Inc.*, No. 17-61633-CIV, 2018 WL 1115142, at *3 (S.D. Fla. Jan. 24, 2018) (finding "the Complaint does not describe a plausible claim for hostile work environment" because the few isolated racial slurs alleged "while certainly offensive and disturbing, are not sufficiently severe or pervasive to alter the terms and conditions of her employment"); *Howard*, 2016 WL 6524394, at *3 (finding plaintiff "insufficiently pled that the alleged harassment was sufficiently severe or pervasive" where the plaintiff alleged (i) his former supervisor made a "racially-offensive joke in plaintiff's presence"; (ii) "an employee uttered a racial expletive in

25

plaintiff's presence that plaintiff overheard and believed was directed to him"; (iii) plaintiff "was the topic of racial jokes and use of" a slur by another employee "on multiple occasions, which were reported to" his former supervisor; and (iv) the same employee once "approached him in an aggressive and threatening manner"); *see also Harris*, 82 F.4th at 1305 (holding employer entitled to summary judgment on hostile work environment claim as allegations that plaintiff's supervisors "made one highly offensive comment, micromanaged and excessively monitored her work, solicited peers to report on her violations, made her perform clerical duties, and disbelieved or ignored her complaints of race discrimination" were "not, given the totality of the circumstances, sufficiently severe or pervasive to alter the terms and conditions of her employment"); *Brooks v. Hyundai Motor Mfg. Ala., LLC*, 444 F. App'x 385, 386 (11th Cir. 2011) ("We can reject plaintiff's hostile work environment claim summarily. The alleged racial slurs were very few in number, and plaintiff testified that they did not adversely affect her job performance."); *Barrow v. Ga. Pacific Corp.*, 144 F. App'x 54, 57–58 (11th Cir. 2005) (holding harassment insufficiently severe or pervasive even considering evidence of "displays of the rebel flag on tool boxes and hard hats, the letters 'KKK' on a bathroom wall and on a block-saw console, and a noose in another employee's locker," as well as racial slurs and a threat).

### d.    Count III fails to state a claim and is due to be dismissed.

Count III alleges retaliation. Among other requirements, one element of such a claim is that Plaintiff "engaged in statutorily protected activity[.]" *See Butler v. Ala.*

26

*Dep't of Transp.*, 536 F.3d 1209, 1212–13 (11th Cir. 2008). Defendant argues Plaintiff fails to plausibly allege protected activity. Doc. 10 at 12–13. The undersigned agrees.

The Pleading includes conclusory allegations of protected activity, but such are due to be disregarded. *See Iqbal*, 556 U.S. at 678; *Omegle.com LLC*, 122 F.4th at 1270; *Warren Tech., Inc.*, 962 F.3d at 1328; *Anthony*, 626 F.3d at 1321; *see also Silien v. Waste Mgmt. Inc. of Fla.*, No. 22-cv-81531-WPD, 2022 WL 17685507, at \*4 (S.D. Fla. Nov. 10, 2022); *Williams v. Primebridge Cap., LLC*, No. 6:18-cv-1698-Orl-22DCI, 2019 WL 13272279, at \*3 (M.D. Fla. Jan. 24, 2019).

In the factual presentation of her Response, Doc. 12, Plaintiff relies only on paragraphs 35–37 of the Pleading to infer protected conduct, *id.* at 4, 15–16. Though not cited by Plaintiff, the undersigned will also consider paragraphs 38–39 of the Pleading, the only other arguable factual support therein for arguably protected conduct. Plaintiff alleges that (i) on February 8, 2024, she was asked to meet with her supervisors in reference to a write-up she had received; (ii) Plaintiff "requested that a Human Resources representative be present during the meeting" but her request was denied; (iii) at the meeting, "Mr. Soto spoke to the Plaintiff with hostility and intimidation" and Plaintiff, who "was not given a fair opportunity to explain herself[,]" felt "targeted, bullied, and intimidated"; and (iv) Plaintiff subsequently reached out to Ms. Ford (the department director) after this meeting "to request a

second meeting to include the Plaintiff, Ms. Ford and an HR representative" but no such meeting was scheduled. Doc. 9, ¶¶ 35–39.[16]

These allegations do not plausibly amount to protected activity. To engage in protected activity, an employee must "'at the very least, communicate her belief that discrimination is occurring to the employer,' and cannot rely on the employer to 'infer that discrimination has occurred.'" *See Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009) (citation omitted); *Boles v. Dist. Bd. of Trs. of Seminole State Coll., Fla.*, No. 6:17-cv-2071-Orl-22DCI, 2018 WL 11476498, at *11 (M.D. Fla. June 27, 2018) ("To qualify as statutorily protected expression, the employee must specifically communicate to the employer that *discrimination* has occurred."); *see also Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010); *Brown v. Fla. Gulf Coast Univ. Bd. of Trs.*, No. 2:18-cv-157-FtM-29MRM, 2018 WL 5971661, at *8 (M.D. Fla. Nov. 14, 2018).

A plaintiff's entitlement to *reasonable* inferences is not a license for "unwarranted deductions" or speculative gap-filling. *See Omegle.com LLC*, 122 F.4th at 1270; *Warren Tech.,* 962 F.3d at 1328; *Sinaltrainal*, 578 F.3d at 1260; *see also Patton*, 2024 WL 1886504, at *3. Here, at most, Plaintiff's allegations suggest that (i) when asked to meet with her supervisors to discuss a write-up, she requested—for

---

[16] In her Response, without any citation, Plaintiff argues that "Plaintiff contacted Defendant to request a meeting regarding the racial discrimination she had experienced." Doc. 12 at 15. As discussed herein, this assertion is simply inconsistent with the allegations in the Pleading. But in evaluating the Motion, review is confined to the Pleading, not outside assertions of counsel in the Response. *See Wilchombe*, 555 F.3d at 959.

unspecified reasons—an HR representative's attendance; and (ii) after believing she had been bullied and intimidated by her harsh treatment at the meeting, she again asked for a second meeting to include an HR representative. Even assuming the second request to Ms. Ford included an explanation for *why* Plaintiff wanted HR in attendance, the best inference that can be reasonably drawn in favor of Plaintiff is that she had explained her feeling that she had received "unjust treatment" at the first meeting. *See* Doc. 9 at ¶¶ 37–39; Doc. 9-1 at 2.[17] However, it cannot reasonably be inferred from her allegations that Plaintiff ever expressed a desire to meet with HR because of mistreatment *based on race*, as necessary to potentially constitute protected activity. *See Murphy*, 383 F. App'x at 918; *Demers*, 321 F. App'x at 852; *Brown*, 2018 WL 5971661, at *8; *Boles*, 2018 WL 11476498, at *11; *see also Jeronimus v. Polk Cnty. Opportunity Council, Inc.*, 145 F. App'x 319, 326 (11th Cir. 2005) (finding "email did not amount to protected conduct" because while the plaintiff "complained of being 'singled out,' being subjected to 'a campaign of harassment,' and working in a 'hostile environment,' he never suggested that this treatment was in any way related to his race or sex"); *Favier v. Dart Container Co. of Fla. LLC*, No. 8:22-cv-1601-TPB-TGW, 2025 WL 2591837, at *5 (M.D. Fla. Sept. 8, 2025) ("Title VII does not prohibit 'retaliation' for employee complaints about matters other than race, national origin, or other issues

---

[17] In an abundance of caution, the undersigned has considered the EEOC Charge, which is a part of the Pleading for all purposes, *see* Fed. R. Civ. P. 10(c), notwithstanding Plaintiff's failure to rely on it in her Response. The EEOC Charge is generally consistent with the body of the Pleading, but it includes the additional detail that when reaching out to Ms. Ford Plaintiff "requested a meeting with her and Human Resources to address the unjust treatment I was experiencing." Doc. 9-1 at 2.

covered by Title VII. While it is true that Plaintiff submitted a number of complaints to Defendant's human resources department, including a complaint about 'bullying,' nothing in the record indicates Plaintiff communicated to Defendant that any of the conduct he complained of related to his national origin or to any other matter covered by Title VII."); *Freese v. Wuesthoff Health Sys., Inc.*, No. 6:06-cv-175-Orl-31JGG, 2006 WL 1382111, at *7 (M.D. Fla. May 19, 2006) ("A complaint about treatment or discipline, unrelated to statutorily-protected matters, does not constitute protected activity, and thus cannot serve as the basis for a retaliation claim.").

As such, Plaintiff has failed to plausibly allege protected activity, and her retaliation claim fails. *See, e.g.*, *Norris v. Honeywell Int'l, Inc.*, No. 8:22-cv-1675-CEH-TGW, 2023 WL 6256183, at *19 (M.D. Fla. Sept. 26, 2023) ("Plaintiffs must allege that they opposed an unlawful practice by complaining, or at least implying, that it constituted discrimination on a ground protected by Title VII. … Plaintiffs' underlying factual allegations do not bridge the gap."); *Sumpter v. Grady Mem'l Hosp. Corp.*, No. 1:21-cv-4801-SCJ, 2022 WL 22962427, at *6 (N.D. Ga. Sept. 30, 2022) ("[The alleged] practice falls into the category of garden-variety unfairness in the workplace rather than discrimination. … [T]he Court cannot say, even when construing the facts and inferences drawn therefrom in the light most favorable to Plaintiff, that Plaintiff has sufficiently alleged that she engaged in a protected activity under Title VII[.]"); *Benavides v. Georgia Pub. Def. Council*, No. 2:19-cv-281-SCJ-JCF, 2021 WL 2448360, at *8 (N.D. Ga. Jan. 14, 2021) ("But [the plaintiff] does not allege facts that plausibly show that he complained that he was being discriminated against *because of* his race or

national origin when he allegedly complained about his workload. His conclusory allegations that he engaged in statutorily protected activity by complaining about 'seclusion, segregation, and discrimination' by having his workload reassigned—devoid of further factual enhancement—are insufficient[.]") (citations omitted), *report and recommendation adopted*, 2021 WL 2447517 (N.D. Ga. Feb. 3, 2021); *Grossman v. Air Methods Corp.*, No. 8:19-cv-2399-T-33JSS, 2020 WL 495217, at *3 (M.D. Fla. Jan. 30, 2020) ("What is missing from these allegations, however, is any indication that [the plaintiff's] request for this training, information, and reports had anything to do with discrimination of any kind or was a communication in which [she] was expressing her opposition to a discriminatory act or practice. Absent this key component, [she] has not alleged enough facts to allow for recovery under a theory of retaliation.") (citations omitted); *Lowe v. STME, LLC*, No. 8:18-cv-2667-T-33SPF, 2019 WL 1921910, at *3 (M.D. Fla. Apr. 30, 2019) ("[The plaintiff] does not allege that she communicated her belief that race discrimination was occurring. Instead, [she] only alleges that she actively objected in vague language to the order not to travel to Ghana. … But [she] never alleges she actually communicated a belief that [her employer's] ultimatum constituted racial discrimination against black Africans."); *Boles*, 2018 WL 11476498, at *10–11 (dismissing retaliation claim where, among other defects, the plaintiff alleged "she complained to the Board 'about conduct that *constituted* racial discrimination,'" but she fell "short of explicitly stating that she complained [her supervisor's] conduct was 'racially motivated' or 'race discrimination' (as opposed to an ineffective or abrasive management style)").

31

## V.      Conclusion

For the reasons set forth herein, the undesigned recommends that the Motion is due to be granted in part and denied in part.[18] Accordingly, it is **respectfully recommended** that:

1.      The Motion (Doc. 10) be **granted in part and denied in part** as set forth herein; and

2.      Count I of the Pleading be **dismissed with prejudice in part** and limited to claims alleging disparate treatment based on Plaintiff's forced floating and her termination; Count II of the Pleading be **dismissed with prejudice**; and Count III of the Pleading be **dismissed with prejudice.**

### Notice

"Within 14 days after being served with a copy of [a] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's

---

[18] A dismissal under Rule 12(b)(6) is presumptively on the merits, or with prejudice. *See Powrzanas v. Jones Util. & Contracting Co. Inc.*, 822 F. App'x 926, 927–28 (11th Cir. 2020); *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990); *see also Otero v. Newrez LLC*, No. 21-12990, 2022 WL 3155414, at *2 (11th Cir. Aug. 8, 2022). To that end, Defendant seeks dismissal with prejudice, Doc. 10 at 8, 11–13, and, apart from arguing the sufficiency of the allegations, the Response does not argue otherwise, Doc. 12. Moreover, when Defendant filed its Motion, Plaintiff could have exercised her option to amend the Pleading as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B); *see also* Doc. 8 at 4 n.1. Plaintiff elected not to do so, instead filing her Response. Nor has Plaintiff, who is represented by counsel, moved for leave to amend. As such, dismissal with prejudice is appropriate. *See Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1297–98 (11th Cir. 2025) (en banc) (explaining that a district court need not grant leave to amend *sua sponte* when such leave is not requested by a plaintiff who is represented by counsel, *i.e.* "'[a] district court may dismiss a complaint with prejudice where the plaintiff fails to request leave to amend'") (citations omitted); *see also Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). This rule applies regardless of whether any amendment would or would not be futile. *See Pop*, 145 F.4th at 1297 & n.12; *see also Root v. Kling*, No. 3:20-cv-118-J-34JRK, 2020 WL 1476741, at *2 & n.3 (M.D. Fla. Mar. 26, 2020).

objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations impacts the scope of review by a district judge and by an appellate court. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); 11th Cir. R. 3-1. "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). "A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation … waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]" 11th Cir. R. 3-1.

**DONE AND ENTERED** in Jacksonville, Florida, on December 15, 2025.

Samuel J. Horovitz
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard

Counsel of Record